### W. N. WORTHINGTON *v.* JAMES CRUTCHER, &c.

**Principal and Agent—Liability of Agent.**

If an agent has by a deviation from his orders, or by any misconduct, or omission of duty, become responsible to his principal for damages, he will be discharged therefrom by the ratification of his acts, or omissions, by the principal, if made with a full knowledge of all the facts and circumstances.

**Same—Fraud or Collusion.**

In the absence of a charge and proof of fraud upon the part of the agent, the principal cannot be heard to attack the agents acts, thus ratified by him.

**Brokers—Right to Dispose of Stocks—Pledges.**

A contract by a broker and his customer, "It is agreed between C. and W. that if the margin became exhausted, W. should sell said stock and any loss sustained on such sale of said stock should be paid by C. to W.," and, "W. was to carry and hold the stock for an account of C. until W. should be directed by C. to sell said stock or to deliver same to C." Held, that W. was the agent of C. to the extent to sell said stock, and that W. held and carried the stock under a contract of pledge.

APPEAL FROM JEFFERSON CIRCUIT COURT, CHANCERY DIVISION.

June 24, 1871.

OPINION OF THE COURT BY JUDGE LINDSAY:

The state of facts presented by this record differs materially from that upon which the opinion of the New York Court of Appeals in the case of Markham v. Jondon et al was founded. In

that case "the defendants, who were stock brokers, made an agreement with the plaintiff to purchase and 'carry' certain stocks for him, he to place in their hands ten per cent of the market price of the stocks as a 'margin' and to keep that margin good. Defendants purchased the stocks, and carried it until it fell in value, so that their margin was not good, and after notice to plaintiffs to make it good they sold the stock." The action was for the conversion of the stocks. Upon the trial defendants offered evidence to prove that it was the custom of brokers to sell the stocks in such cases on the exhaustion of the margin and also that the contract in the case was the usual one between brokers and their customers and governed by such custom. The court held that the stocks purchased in pursuance to such contracts were the property of the customer; that the broker was a mere agent in making the purchase, but that he held and carried the stocks for the purchaser, not as an agent or broker, but upon a new duty, and with other rights, and subject to additional responsibilities; that the contract between the parties was, in spirit and effect, a contract of pledge; that as to the advancements made by the defendant for the plaintiff, the stocks were held as collateral security, and that he had no right to sell them and apply the proceeds to the payment of such advancements, until he should first call upon the plaintiff to make good his margin, and failing in this, the customer was entitled, secondly, to notice of the time and place where the stock would be sold, which time and place must be reasonable, and that the custom of brokers could not change or abrogate this well established rule of law. That in order to enable the broker to protect himself from loss, by the exercise of powers, other and greater than those growing out of the ordinary contract of pledge, he must secure the right to sell without notice by a special contract. In this case it is proved by the witness Bullington (and his testimony is not contradicted) that "it was agreed between * * * Crutcher and * * * Worthington that if the * * * margin became exhausted * * * Worthington should sell said stock, and any loss sustained on such sale of said stock should be paid by said Crutcher to said Worthington." Bullington's statement as to his condition of the contract is strongly corroborated by Crutcher's letter of October 30th, 1868, with a full knowledge of the fact that Worthington had sold his stocks, he writes that he regrets the sale of his "Erie" at 39 7-8, as he did not think it would have gone

lower, and requests Worthington, if he agrees with him in opinion, to buy it back for him, and concludes by promising to settle the balance due from him an account of the stock speculation "with as little delay as possible." By his letters of April 13th and December 6th, 1869, he still agrees to pay this balance, and in none of these letters does he intimate that the stocks were sold without authority. But if it be admitted that the sale was made without express authority growing out of the terms of the original contract, it appears from appellee's petition that Worthington was "to carry and hold the 'stock' for and on account of plaintiff, until the defendant should be directed by plaintiff to sell said stock, or to deliver the same to plaintiff." It was contemplated by the parties according to appellee's own version of the contract that upon a certain contingency (when appellee should so direct), Worthington was to sell. He was, therefore, the agent of Crutcher to this extent, although according to the doctrine in the case quoted of Markham v. Jondon held and carried the stock under a contract of pledge. The substance of appellee's complaint in this view of the case is that Worthington in the exercise of his duties as agent, exceeded his authority and sold the stocks without being directed so to do. To this it is answered that the sale was ratified and accepted by the principal and acted upon by both parties from the 30th of October, 1868, when Crutcher was advised by Worthington of the sale, and of all the particulars as to time, price, etc., up to the 13th of June, 1870, when this suit was instituted.

In such a state of case the doctrine seems to be, that if 'an agent has, by a deviation from his orders, or by any misconduct, or omission of duty, become responsible to his principal for damages, he will be discharged therefrom by the ratification of his acts, or omissions, by the principal, if made with a full knowledge of all the facts and circumstances," (Story on Agency, section 243) with a full knowledge of the time and terms of the sale, with a full statement of his account, rendered at his own request, which is not charged to be false or fraudulent. Crutcher ratified the actions of his agent, by his letters, by the execution of his note for the amount of loss incurred in the speculation, by withdrawing his defense and permitting judgment to go against him on said note, and by the execution of the replevin bond to secure the payment of said judgment, and he can not now be allowed to escape the consequence of such ratification, without charging or proving either fraud upon the part of the appellant, or surprise or mistake upon his own part.

We are of opinion that the facts presented by the record satisfactorily establish Worthington's right to sell the stock under the terms of the original contract, and hence that there was no conversion by him of the property of the appellee, but if mistaken in this conclusion, then that the act of Washington in making the sale, was approved and ratified by Crutcher.

For these reasons the judgment of the chancellor is reversed and the cause remanded with instructions to dismiss appellee's petition, and to dissolve the injunction granted upon his prayer.

*Bullock & Anderson, for appellant.*
*Cochran, for appellee.*